# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| R2 SOLUTIONS LLC, | § | |
|   *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| DEEZER, S.A., | § | Civil Action No.  4:21-cv-90 |
|   *Defendant.* | § | Judge Mazzant |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Sealed Motion for Leave to Amend the Complaint (Dkt. #49). Having considered the motion and the relevant pleadings, the Court finds that the motion should be **GRANTED**.

### BACKGROUND

Plaintiff R2 Solutions LLC ("R2") filed the instant suit against Defendant Deezer, S.A. ("Deezer") on January 29, 2021, for infringement of United States Patents No. 8,190,610 (the "'610 Patent"), 8,341,157 (the "'157 Patent"), 7,698,329 (the "'329 Patent"), 8,209,317 (the "'317 Patent"), 9,928,279 (the "'279 Patent"), and 7,370,011 (the "'011 Patent") (Dkt. #49). The parties refer to these patents collectively as the "R2 Patents."

R2's Original Complaint asserted theories of direct infringement of the R2 Patents (Dkt. #1). On February 11, 2021, R2 filed its First Amended Complaint (Dkt. #9). The First Amended Complaint merely removed the patents-in-suit as exhibits to the complaint.

On July 28, 2021, the Court entered a Patent Scheduling Order, which set September 24, 2021, as the deadline for the parties' final amended pleadings (Dkt. #22). Meanwhile, the parties continued conducting discovery.

On December 15, 2021, Deezer provided responses to R2's first set of interrogatories. In its responses, Deezer asserted that it could not directly infringe because all accused instrumentalities and/or functionalities regarding the R2 Patents are located exclusively in and/or occur exclusively in France (Dkt. #49, Exhibit 3).

On December 16, 2021, the Court held a *Markman* hearing. The Court entered its claim construction order on January 4, 2022 (Dkt. #45). Pursuant to the parties' request, the Court entered an amended scheduling order on January 18, 2022, extending several deadlines (Dkt. #48).

On January 21, 2022, R2 moved for leave file its Second Amended Complaint, which adds four counts of induced infringement of the R2 Patents (Dkt. #49). On February 4, 2022, Deezer responded (Dkt. #51).

## LEGAL STANDARD

"When a trial court imposes a scheduling order, Federal Rules of Civil Procedure 15 and 16 operate together to govern the amendment of pleadings." *Tex. Indigenous Council v. Simpkins*, 544 F. App'x. 418, 420 (5th Cir. 2013). Rule 15(a) governs a party's request to amend its pleading before a scheduling order's deadline to amend passes. *See id.* Rule 16(b)(4) governs a party's request to amend its pleading after the deadline to amend passes. *Sapp v. Mem'l Hermann Healthcare Sys.*, 406 F. App'x. 866, 868 (5th Cir. 2010) (citing *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003)).

Rule 15(a) provides that a party may amend its pleading once without seeking leave of court or the consent of the adverse party at any time before a responsive pleading is served. After a responsive pleading is served, "a party may amend only with the opposing party's written consent or the court's leave." *Id.* Rule 15(a)instructs the court to freely give leave when justice so requires." *Id.* The rule "'evinces a bias in favor of granting leave to amend.'" *Jones v. Robinson*

*Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quoting *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002)). But leave to amend "is not automatic." *Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 203 F. Supp. 2d 704, 718 (S.D. Tex. 2000) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)). Whether to grant leave to amend "lies within the sound discretion of the district court." *Little v. Liquid Air Corp.*, 952 F.2d 841, 845–46 (5th Cir. 1992). A district court reviewing a motion to amend pleadings under Rule 15(a) considers five factors: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of amendment. *Smith v. EMC*, 393 F.3d 590, 595 (5th Cir. 2004) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Rule 16(b)(4) provides that a scheduling order issued by the Court "may be modified only for good cause and with the judge's consent." *See Agredano v. State Farm Lloyds*, No. 5:15-CV-1067-DAE, 2017 WL 5203046, at *1 (W.D. Tex. July 26, 2017) (citing *E.E.O.C. v. Serv. Temps Inc.*, 679 F.3d 323, 333–34 (5th Cir. 2012)) (stating, "a party seeking leave to amend its pleadings after a deadline has passed must demonstrate good cause for needing an extension."). "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *S&W Enters., L.L.C.*, 315 F.3d at 535 (quoting 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1522.1 (2d ed. 1990)). In determining whether good cause exists, courts consider a four-part test: "(1) the explanation for the failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice." *Id.* (quoting *Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 257 (5th Cir. 1997)). Only after the movant demonstrates good cause under Rule

3

16(b)(4) does "the more liberal standard of Rule 15(a)" apply to a party's request for leave to amend. *Id.*

## ANALYSIS

Pursuant to the original scheduling order, R2's deadline to file amended pleadings expired on September 24, 2021 (Dk. #22). On January 22, 2022, R2 moved for leave to amend (Dkt. #49). To succeed, R2 must demonstrate good cause under Rule 16(b)(4). Only then may the Court turn to the more liberal Rule 15(a) standard. *S&W Enters., L.L.C.*, 315 F.3d at 535.

### I.     Rule 16(b)(4)

In determining whether good cause exists, courts consider a four-part test: "(1) the explanation for the failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice." *Id.* (quoting *Reliance Ins. Co.*, 110 F.3d at 257). The Court examines these factors in turn.

#### A.  Explanation for Delay

R2 cites Deezer's allegedly dilatory discovery practices, combined with Deezer's contention that it could not infringe because its servers are all located in France, as the reasons for any delay (Dkt. #49 at p. 4). Deezer responds R2 was not diligent in seeking leave to amend because: (1) R2 could have pleaded inducement in its original complaint, (2) there is no new evidence giving rise to the inducement claims, and (3) server location is irrelevant, but if it was relevant, R2 failed to seek such information (Dkt. #51 pp. 7–12).

The Court is satisfied with R2's explanation for delay. In its original complaint, R2 pleaded Deezer is a company organized under the laws of France with its principal place of business in France (Dkt. #1 ¶ 2). While R2 was aware some of Deezer's business activities occurred in France,

4

there was no proof or support for where the alleged infringement took place. *Contra Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 547 (5th Cir. 2003) (denying leave to amend upon finding that "[movant] was aware of the contract that forms the basis of its proposed [counterclaim] months in advance of the deadline and does not offer a satisfactory explanation for its delay in seeking leave to amend"). It was reasonable for R2 to believe Deezer's alleged infringement could have occurred in both France and the United States. Especially considering Deezer advertises and sponsors events in the United States (Dkt. #9 ¶ 2). R2 did not have confirmation from Deezer that its activities occur exclusively in France until December 15, 2021, and this motion was filed roughly one month later. Accordingly, this factor favors amendment.

### B. Importance of the Amendment

R2 argues the ability to assert indirect infringement theories is vital to R2's success (Dkt. #49). Deezer responds the amendment is unimportant and futile (Dkt. #51).

The Court acknowledges R2's amendment is highly important to R2's potential success in this case. Section 271(a) of the Patent Act reaches only activity occurring in the United States. *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1375 (Fed. Cir. 2005) ("It is well-established that the reach of section 271(a) is limited to infringing activities that occur within the United States."); *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1315 (Fed. Cir. 2005) ("The grammatical structure of the [35 U.S.C. § 271(a)] indicates that 'within the United States' is a separate requirement from the infringing acts clause."). Consequently, a patentee must establish that infringing activity occurred in the United States to succeed on an infringement claim. *Litecubes, LLC v. N. Light Prods.*, 523 F.3d 1353, 1357 (Fed. Cir. 2008) ("A plaintiff must prove that allegedly infringing activity took place in the United States to prevail on claims of patent . . . infringement[.]"); *Shockley v. Arcan*, 248 F.3d 1349, 1364 (Fed. Cir.

2001) ("To be liable for infringement under 35 U.S.C. § 271, a party must make, use, offer to sell, or sell within the United States, or import into the United States, the patented invention."). Conversely, an infringement claim cannot be premised on activity that occurred entirely in a foreign country. *Forrester Envtl. Servs. v. Wheelabrator Techs., Inc.*, 715 F.3d 1329, 1334 (Fed. Cir. 2013) ("[T]he use of a patented process outside the United States is not an act of patent infringement."). Thus, assuming all of the alleged infringing activity has occurred in France, R2's claims for direct infringement pursuant to § 271 would not be viable. *See Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454–455 (2007) ("The presumption that United States law governs domestically but does not rule the world applies with particular force in patent law.").

By contrast, "[u]nlike direct infringement, which must take place within the United States, induced infringement does not require any activity by the indirect infringer in this country, as long as the direct infringement occurs here." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006). Accordingly, the proposed four counts of induced infringement are not constrained by territoriality requirements, unlike R2's other asserted claims. The amendment is vital to the survival of this litigation and is therefore important.

However, Deezer asserts R2's amendments would be futile because the new counts "would be met with a Rule 12(b)(6) motion for dismissal for failure to state a claim" (Dkt. #51 at p. 12). More specifically, Deezer argues there is no basis to allege it could induce others to infringe claims on a "computer readable medium" located outside the United States (Dkt. #51 at p. 12).

A proposed amendment is futile "if it would fail to state a claim upon which relief could be granted." *Raytheon Co. v. Indigo Sys. Corp.*, No. 4:07-cv-109, 2008 WL 3852715, at *3 (E.D. Tex. Aug. 14, 2008). That is, "if the revision would not survive a motion made under Rule 12(b)(6), the motion for leave to amend should be denied." *Id.* Based on this standard, the Court

finds that R2's proposed amendment is not futile. Deezer's argument that R2 has no basis to allege it could induce others to infringe claims on a "computer readable medium" is more suitable for determination at a later stage of the litigation. Thus, this factor weighs in favor of amendment.

### C. Prejudice and Availability of Continuance

R2 argues Deezer would suffer no prejudice if the Court allowed R2 to amend since since Deezer has completed so little discovery, it would not have to duplicate any of its prior efforts. Deezer contends it would suffer severe prejudice as a result of the addition of the inducement claims due to the late stage of trial and substantial expenditure of resources defending additional claims of induced infringement would require. Deezer also argues it could have pursued *inter partes* review proceedings or a different trial strategy had it known it would be facing claims of induced infringement. However, knowing the territorial limitations on direct infringement and given it was always aware any alleged infringement activity could only occur in France, Deezer could have anticipated R2 would likely need to assert indirect infringement claims. Thus, this argument regarding potential prejudice suffers.

Moreover, Deezer's protests about the discovery it must conduct at this "late stage" may be premature. Pursuant to the amended scheduling order, fact discovery does not close until April, R2's expert designation is due April 26, 2022, Deezer's expert designation is not due until May 24, 2022, the expert discovery deadline is June 7, 2022, and dispositive motions are not due until June 17, 2022 (Dkt. #48). Additionally, the final pretrial conference is set for August 4, 2022, and no trial date has yet been set by the Court (Dkt. #48). Furthermore, the Court stayed all deadlines in this case for thirty days on February 15, 2022 (Dkt. #54). Accordingly, Deezer has adequate notice of the indirect infringement theories to timely conduct discovery, which minimizes any potential prejudice. *Cf. LBS Innovations, LLC v. Aaron Bros. Inc.*, No. 2:11-cv-142, 2012 WL

12897919, at *2 (E.D. Tex. Nov. 9, 2012) (finding no prejudice where plaintiff timely amended its infringement contentions "well before the discovery deadline"). Even more, granting leave to amend would not inevitably delay trial or any other deadline. Thus, because the current schedule limits any prejudice caused by R2's amended complaint, the availability of a continuance in this case is a neutral consideration.

Given that three of the factors support granting leave to amend and one is neutral, the Court finds there is good cause under Rule 16(b)(4) to grant R2's motion. Accordingly, the Court now applies the more liberal Rule 15(a) standard to determine whether it should grant leave to amend R2's complaint. *S&W Enters., L.L.C.*, 315 F.3d at 535.

## II. Rule 15(a)

Rule 15(a) "'evinces a bias in favor of granting leave to amend.'" *Jones*, 427 F.3d at 994 (quoting *Lyn—Lea Travel Corp.*, 283 F.3d at 286). But leave to amend "is not automatic." *Matagorda Ventures, Inc.*, 203 F. Supp. 2d at 718 (citing *Dussouy*, 660 F.2d at 598). A district court reviewing a motion to amend pleadings under Rule 15(a) considers five factors: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of amendment. *Smith*, 393 F.3d at 595 (citing *Foman*, 371 U.S. at 182). The Court will proceed accordingly.

### A. Undue Delay, Undue Prejudice, and Futility

As explained above in the Rule 16(b)(4) analysis, the Court does not find any undue prejudice to Deezer. Moreover, the Court has already discussed why amending the complaint is not futile. Finally, while R2 seeks to amend its complaint several months after the deadline set forth in the Court's original scheduling order, the Court acknowledges the instant motion was filed only a few weeks after the claim construction order, and roughly a month after Deezer first asserted

8

it could not directly infringe the R2 patents because the servers are located in France. Under the more lenient Rule 15(a) standard, the Court does not find such a timeline reflects undue delay.

### B. Bad Faith or Dilatory Motive

Deezer argues it agreed to extend fact discovery before it knew R2 intended to add the four counts of induced infringement (Dkt. #51 at p. 14). Deezer contends it would have opposed the extension had it known R2's intentions (Dkt. #51 at p. 15). This is the closest Deezer comes to arguing R2 acted in bad faith. If this is even a contested factor, Deezer's failure to fully inquire into the reasons for the requested extension does not show R2 acted in bad faith. The Court finds little evidence to support the argument that R2 acted in bad faith or with dilatory motive.

### C. Repeated Failure to Cure Deficiencies

Deezer does not contest this factor. Additionally, given that this is the first time R2 has sought leave of court to add the newly asserted claims, the Court finds R2 has not repeatedly failed to cure deficiencies. *Meier v. UHS of Del, Inc.*, No. 4:18-cv-615, 2019 WL 2515365, at *7 (E.D. Tex. June 18, 2019) (finding plaintiffs did not repeatedly fail to cure deficiencies where plaintiffs sought leave to amend their complaint to add facts which had not previously been asserted). As Rule 15(a) promotes granting leave to amend, the Court finds that this uncontested factor weighs in favor of granting R2's motion. *Wapp Tech L.P. v. Micro Focus Int'l*, PLC, 406 F. Supp. 3d 585, 599 n.11 (E.D. Tex. 2019) (finding uncontested factors weighed in favor of granting leave to amend).

Based on the factors analyzed above, the Court finds that the Rule 15(a) factors weigh in favor of granting R2 leave to file its Second Amended Complaint. Deezer provides no reason that overcomes the presumption in favor of granting R2's leave to amend. Accordingly, R2's motion should be granted.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Sealed Motion for Leave to Amend the Complaint (Dkt. #49) is hereby **GRANTED.** As the Clerk does not remove and file exhibits, Plaintiff is directed to file without delay.

**IT IS SO ORDERED.**

 **SIGNED this 4th day of March, 2022.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE